(March 11, 2003)

■ ONRIS DE LA ROSA, Respondent, v PHILIP MORRIS MANAGEMENT CORPORATION, Respondent, and SHORENSTEIN COMPANY EAST, L.P., Appellant, et al., Defendant. [757 NYS2d 527] —Order, Supreme Court, Bronx County (George Friedman, J.), entered January 22, 2002, which, insofar as appealed from, denied defendant-appellant Shorenstein Company East, L.P.'s motion for summary judgment dismissing plaintiff's common-law negligence claim and for summary judgment on its

contractual indemnity cross claim against defendant Philip Morris Management Corporation, unanimously reversed, on the law, without costs, and appellant's motion granted.

Defendant Philip Morris Management Corporation (Philip Morris) owns certain premises located at 120 Park Avenue in Manhattan. Philip Morris contracted with defendant The Shorenstein Company East, L.P. (Shorenstein) to manage day-to-day operations and maintain the premises, including hiring outside contractors, as needed, to perform emergency repairs. On February 24, 1998, Philip Morris and Shorenstein learned that the metal rolling gate to the building's 41st Street loading dock was struck by a truck and disabled. Shorenstein, pursuant to its contractual responsibilities, contacted defendant Professional Rolling Door Service (Professional) to perform the emergency repair. Professional had no one available and consequently subcontracted Global Overhead Doors (Global), which sent plaintiff and his boss to the building, equipping them with a ladder and tools.

In order to repair the gate, plaintiff used an extension ladder which was about 15 feet high. Plaintiff claims that due to the slope of the ground, the ladder would not stand level. Plaintiff alleges that his boss placed the left leg of the ladder on a piece of wood in order to keep the ladder level on the ground. Plaintiff climbed the ladder and began using a crowbar on the gate. However, the piece of wood under the leg moved, causing the ladder to shift. Plaintiff fell off the ladder, sustaining injury.

Plaintiff commenced this action against defendants alleging common-law negligence* and violations of Labor Law § 240 (1) and § 241 (6). Defendants answered asserting cross claims against each other for contribution and indemnification. After joinder of issue, Shorenstein moved for summary judgment on its cross claim against Philip Morris for a defense and for contractual indemnification and to dismiss plaintiff's common-law negligence claim on the ground that it did not supervise or control plaintiff's work.

The Supreme Court denied Shorenstein's motion. Specifically, the court found that "pursuant to the admissible evidence adduced, several unresolved issues of fact exist concerning, inter alia, possible supervisory authority, and consequent negligence by defendants [Philip Morris] and/or [Shorenstein], both of whom concededly had personnel on site who exercised managerial authority over the location in question." As to

---

* The common-law duty imposed upon an owner or general contractor to provide construction workers with a safe work site has been codified by Labor Law § 200 (see *Blessinger v Estee Lauder Cos.*, 271 AD2d 343 [2000]).

contractual indemnity, the court opined that the meaning and interpretation of the "reciprocal indemnification obligation" language in the managerial contract between Philip Morris and Shorenstein was "unresolved."

On appeal, Shorenstein argues that the court erred in failing to dismiss plaintiff's common-law negligence claim and in failing to grant judgment on its contractual indemnity cross claim against Philip Morris. Labor Law § 200 applies to an owner or managing agent who exercises control or supervision over the work performed at the accident site (*see Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876 [1993]; *Blessinger v Estee Lauder Cos.*, 271 AD2d 343 [2000]). A general duty to supervise the work and ensure compliance with safety regulations is insufficient to constitute the requisite supervision and control under Labor Law § 200 (*see Buccini v 1568 Broadway Assoc.*, 250 AD2d 466, 469 [1998]). Moreover, a duty to provide a safe workplace is not breached where plaintiff's alleged injuries arose out of an alleged defect in his employer's tools or methods (*see Cruz v Toscano*, 269 AD2d 122, 123 [2000]).

Here, the record demonstrates that Shorenstein had, at most, a general supervisory authority over Global's performance of the work and had no authority over the manner and method in which plaintiff performed his work. Although the record reflects that there was a brief 5- to- 10-minute period when Shorenstein's property manager and a Philip Morris employee were present at the job site, they did not provide any instruction to plaintiff or his boss. Nor did Shorenstein provide plaintiff with the ladder, crowbar, or any other equipment. Consequently, even if Shorenstein's manager or any other employee had told plaintiff or his boss what work was to be done during that brief time period, the record is devoid of any proof that that person had exercised any supervisory authority or control over how the work would be done. The accident occurred as a result of the placement of the ladder by plaintiff's boss and his attempt to balance it by putting a piece of wood under one end. There is no evidence in the record that Shorenstein had any control over the positioning of the ladder. Indeed, plaintiff testified that he was supervised by and received instructions only from his boss and that his employer provided the equipment. Accordingly, the Supreme Court erred in denying that branch of Shorenstein's motion for summary judgment dismissing plaintiff's common-law negligence cause of action.

Shorenstein further argues on appeal that the Supreme Court erred in failing to grant summary judgment on its cross claim against Philip Morris for a defense and contractual

indemnification. The relevant indemnification provisions of the contract between Philip Morris and Shorenstein are clear and unambiguous. Specifically, section 3.01 of the contract, in pertinent part, requires Philip Morris to provide Shorenstein with a defense and indemnification against any loss arising out of Shorenstein's performance of its duties and obligations as managing agent, as long as the liability is not predicated on, inter alia, Shorenstein's own "negligent or tortious acts or omissions, bad faith, or willful misconduct" or "any action by [Shorenstein] * * * taken outside the scope of its authority as provided in this Agreement, except as approved by [Philip Morris] or taken at the direction of or in participation with [Philip Morris]."

These provisions do not violate General Obligations Law § 5-322.1 because the contract does not seek to have Philip Morris indemnify Shorenstein for Shorenstein's own negligence. As to Philip Morris's contention that Shorenstein is only entitled to contractual indemnification where Shorenstein is not negligent itself *and* where Philip Morris is negligent, it is well settled that "[i]n contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability. Whether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia v Professional Data Mgt.,* 259 AD2d 60, 65 [1999]). Thus, Shorenstein's request for contractual indemnification is not premature, and judgment should have been granted in its favor on this cross claim. Concur—Mazzarelli, J.P., Andrias, Buckley and Marlow, JJ.